UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                           ACTION NO. 2:17cv223

RIC ANTHONY PALMER,

        Defendant.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

This matter is before the Court on plaintiff's motion for default judgment as to defendant Ric Anthony Palmer. ECF No. 7. This matter was referred to the undersigned United States Magistrate Judge pursuant to a February 13, 2018 referral order from United States District Judge Arenda L. Wright Allen. ECF No. 9; *see also* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); E.D. Va. Local Civ. R. 72. For the reasons discussed below, the undersigned recommends that the Court **GRANT** plaintiff's motion for default judgment.

### I. PROCEDURAL HISTORY

On April 20, 2017, the United States filed a complaint against defendant Ric Anthony Palmer ("Palmer"), seeking, among other things, to reduce to judgment and collect federal income taxes assessed against him for five tax years. Complaint ("Compl."), ECF No. 1 at 1. On June 30, 2017, the United States filed a proof of service, accompanied by a declaration from the process server, indicating that the summons and complaint were served on June 1, 2017. ECF Nos. 5, 5-1. In the absence of any appearance by Palmer or the filing of a response to the

complaint, the United States requested, and the Clerk entered, a default as to Palmer on July 17, 2017. ECF No. 6. On September 8, 2017, the United States moved for entry of a default judgment. ECF No. 7. Palmer has not responded to the motion and the time for doing so has expired.

Following the Court's referral order, on February 15, 2018, the undersigned issued an order directing that a hearing be scheduled on the motion for default judgment on or before March 19, 2018 and that the United States file a pre-hearing brief addressing the sufficiency of service of process. ECF No. 10 at 1–2 (also directing that a copy of the order be sent to the address specified for plaintiff in the previously filed proof of service, ECF No. 5). On March 9, 2018, the United States filed a brief contending that the government properly served Palmer with the summons and complaint. ECF No. 11. On March 14, 2018, the Court issued a notice of hearing on the motion for entry of default judgment and directed that the notice be mailed to Palmer at the Virginia Beach address noted in the process server's declaration filed by the United States. ECF No. 12; ECF No. 5-1.

The Court held an evidentiary hearing on March 19, 2018, at which counsel for the United States appeared. ECF No. 13. Neither Palmer nor any representative appeared on his behalf. At the hearing, the United States presented testimony from two witnesses (process server Douglas W. Wemer, Jr., and Internal Revenue Service ("IRS") Revenue Officer Lynette Summerton) and the Court admitted one exhibit into evidence.

## II. FACTUAL BACKGROUND

### A. The Complaint, Tax Assessments, and Statutory Additions

The one-count complaint seeks to reduce to judgment and collect federal income tax assessments against Palmer and contains the following allegations. Compl. at 1. Palmer, a

2

resident of Virginia Beach, VA, failed to file federal income tax returns for tax years 2004, 2006, 2007, 2008, and 2012. *Id.* at ¶¶ 4–5. As a result, the IRS prepared returns for Palmer and a delegate of the Secretary of the Treasury prepared assessments against him for federal income tax and statutory additions to tax (such as accrued interest and penalties). *Id.* at ¶ 5; *see* 26 U.S.C. § 6601(a) (providing for accrual of interest on unpaid taxes); 26 U.S.C. § 6020(b)(1) (authorizing the Secretary to prepare returns when a taxpayer does not file them). As of April 17, 2017, the unpaid balance of the assessments and accrued interest and penalties against Palmer totaled: (1) $114,070.48 for 2004; (2) $38,544.97 for 2006; (3) $6,426.49 for 2007; (4) $11,723.13 for 2008; and (5) $588.73 for 2012. *Id.* The aggregate amount due as of April 17, 2017 was $171,353.80, plus statutory additions to tax as provided by law. *Id.* at ¶ 6. The complaint seeks a judgment declaring that Palmer is indebted to the United States for such sum, with additions as authorized by statute continuing until payment occurs, as well as the costs associated with prosecuting this suit. *Id.* at 2–3.

To substantiate the factual information contained in the complaint, the United States appended to its motion for default judgment a sworn and signed declaration from IRS Revenue Officer Jeffrey D. Willingham ("Willingham"), who worked on the Palmer matter and had access to IRS records pertaining to his reported income tax and related obligations. ECF No. 7-1 at ¶¶ 1–3. Willingham's declaration confirms that Palmer failed to file federal income tax returns for the five years specified in the complaint. *Id.* at ¶ 4. Willingham further states that the IRS prepared tax returns for Palmer for those years, based upon the income Palmer received for each of the years in question. *Id.* Following the preparation and examination of such returns, Willingham recites that a delegate of the Secretary of the Treasury lodged assessments against Palmer for federal income tax and statutory additions thereto identical to those set forth in the

complaint and that the aggregate amount due as of April 17, 2017, after applying any payments, is the $171,353.80 sum, plus statutory additions, sought in the complaint. *Id.*[1] To further corroborate such sums, Willingham also attached true copies of IRS transcripts for Palmer's taxpayer account for each of the tax years in question. *Id.* at 3–16. These transcripts contain, among other things, selected information from the tax returns prepared by the IRS for the years in question, information about the account balances, interest, and any penalties due as of April 17, 2017, and a chronological history of transactions pertaining to Palmer's account for each tax year at issue. *Id.*

**B.    Service of Process**

After filing the complaint, the United States filed a proof of service, along with a signed declaration from process server Douglas W. Wemer, Jr. ("Wemer"). ECF Nos. 5, 5-1. Under penalty of perjury, Wemer recites that his employer, after being retained by the United States Department of Justice, assigned him to serve the summons and complaint upon Palmer at the Virginia Beach residential address noted in the declaration. ECF No. 5-1 at ¶¶ 1–2 (reciting the same residential address listed for the defendant in the summons and the style of the case on page one of the complaint). Wemer, who is over 18 years of age, reports that from May 15 to June 1, 2017, he made seven attempts to personally serve Palmer at his residence. *Id.* at ¶¶ 4, 6. These efforts were unsuccessful. *Id.* at ¶¶ 7–13.

When Wemer went to the residential address on May 16, 2017, however, he met a woman who answered the door, identified herself as Palmer's mother, and stated that Palmer no

---

[1] One minor discrepancy exists between the complaint's specification of the total amount due for 2007 ($6,426.49) and the corresponding sum specified in Willingham's declaration ($6,426.4). *Compare* Compl. at ¶ 5 *with* ECF No. 7-1 at ¶ 4. Nevertheless, the aggregate totals in the two documents are the same and the account transcript for the 2007 tax year (attached as exhibit A to Willingham's declaration) confirms that the complaint correctly identifies the sum for the 2007 tax year. ECF No. 7-1 at 9.

longer resided there and "she did not know where he was." *Id.* at ¶ 8. At the hearing, Wemer elaborated upon this encounter, stating that he asked if Palmer was home and advised that he had legal documents to give to him, at which point the mother exhibited a change of attitude towards him. He also testified that the mother stated that she had no way to contact Palmer. Rather than attempting to serve her, Wemer testified that he returned to his car and sought direction from his supervisor, who directed by telephone that he continue to attempt to personally serve Palmer for another week.

Wemer's declaration further recites that he returned to the same residential address on five subsequent occasions, only to find that no one was home (on four occasions) and no one would answer the door (on the last occasion). *Id.* at ¶¶ 9–13. On the last occasion on June 1, 2017, Wemer went to the same address, observed a vehicle parked in the driveway, and heard the voice of an adult male speaking to someone else inside the house. *Id.* at ¶ 13. During the hearing, Wemer elaborated that he heard adult males speaking to one another inside the house and that, after he knocked on the door, their conversation stopped. While reporting that he then heard shuffling noises, Wemer testified that no one came to the door. In response, Wemer testified that he announced his presence by providing his name and noting that he was there to serve legal documents on Palmer. Wemer testified that he again consulted telephonically with his supervisor about how to proceed. After doing so, Wemer then taped the summons and complaint to the front door. *Id.* Thereafter, Wemer also mailed a copy of the summons and complaint to the same residential address. *Id.* Although his declaration does not specify the date, Wemer testified to mailing the documents shortly after posting service on the door and doing so before signing the declaration on June 26, 2017.

5

During the March 19, 2017 hearing, the United States also elicited testimony from IRS Revenue Officer Lynette Summerton ("Summerton"). Summerton testified that, prior to Wemer's efforts to serve process, she was assigned to visit the same Virginia Beach residential address noted above to try to locate Palmer. While sitting in her car outside of that location on February 14, 2017, Summerton observed a man drive up in a truck, get out, and walk towards the house. Summerton identified herself to the man, who identified himself as Palmer, and accompanied him inside to discuss the IRS's effort to collect the assessed taxes and the balance due on his taxpayer account. During this discussion, Summerton noted biographical (social security number and date of birth) and other information voluntarily supplied by Palmer on an IRS form 443-A (a collection information statement). *See* Government Exhibit ("GX") 1, ECF No. 14. Summerton testified that Palmer advised her that he and his girlfriend, Robin Hansell, co-owned and resided together at the house. *See* GX 1 at 1–2 (noting "address owned by [b]oth"). Palmer advised that they bought the house in 2015, using funds obtained from Hansell's trust fund. *Id.* at 2–3. During their discussion, Palmer admitted to knowing that the IRS was seeking to collect unpaid taxes from him and knowing that the IRS intended to file returns for him, due to a telephone call with an IRS representative. Summerton testified that she and Palmer discussed ways he could resolve the matter with the IRS and she supplied the name and telephone number for the IRS revenue officer (in Florida) with responsibility over his matter. She testified that Palmer stated that he would call this person the next day and she departed the residence.

As part of its March 9, 2018 brief regarding service of process, the United States attached a sworn and signed declaration from Michael J. Martineau, a trial attorney from the Tax Division of the United States Department of Justice assigned to this case. ECF No. 11-1. Both the

6

Martineau declaration, and exhibits B, C, D, and E attached thereto, contain information about the ownership of the Virginia Beach residential address where Werner taped the summons and complaint. *Id.*

Exhibit B to the Martineau declaration is a copy of a deed conveying the real property at such address to Ric Anthony Palmer and Robin Hansell, "as joint tenants by the entirety with the right of survivorship," that was recorded with the Circuit Court of Virginia Beach on August 11, 2015. *Id.* at 11–14.

Exhibit C to the Martineau declaration, a March 8, 2017 real estate tax account information statement apparently obtained from a City of Virginia Beach public website, indicates that the Treasurer's Office lists "Palmer Rick Anthony" as the owner of the property located at the residential address referred to above and whose property tax bills for 2016 and 2017 totaled $1,352.54 and $2,445.72, respectively. *Id.* at 16.

Exhibit D to the Martineau declaration reflects that, on February 28, 2017, the United States recorded a tax lien at the Circuit Court of Virginia Beach against the property located at the residential address noted above to attempt to recover federal income taxes, interest, and penalties due from Palmer for the tax years discussed above. *Id.* at 18–19.

Exhibit E to the Martineau declaration reflects that, soon after the filing of this tax lien, on April 19, 2017, a "quit claim deed of gift" was filed in the circuit court records, which purported to convey the real property at the residential address noted above from Ric Palmer ("I/R/T/A Rick Anthony Palmer") and Robin Hansell to Robin Hansell. *Id.* at 21–23. The third page of this deed of gift indicates that Ric Anthony Palmer signed the deed before a notary public in Virginia Beach on April 11, 2017. *Id.* at 23.

Martineau's declaration notes that each of the foregoing exhibits was contained in his

case file, which also "reflects . . . that no documents mailed to Ric Anthony Palmer at [the residential address noted above]—including the summons and Complaint, the Clerk's entry of default as to Ric Anthony Palmer, and the United States' Motion for Default Judgment . . .— have been returned as undeliverable." *Id.* at 2.

### III. JURISDICTION AND VENUE

#### A.   Subject Matter Jurisdiction

To render a default judgment, the Court must have subject matter jurisdiction over the case and personal jurisdiction over the defaulting party. Venue must also be proper. Here, the Court has subject matter jurisdiction over the claim brought by the United States, pursuant to 28 U.S.C. §§ 1331, 1340, and 26 U.S.C. § 7402(a), as the claim arises under federal law and from an Act of Congress providing for internal revenue.

#### B.   Personal Jurisdiction

To establish that a court possesses personal jurisdiction over the defendant, it is necessary to effect proper service of process upon the defendant. *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 441, 444–45 (1946); *Cent. Operating Co. v. Util. Workers of Am., AFL-CIO*, 491 F.2d 245, 249–51 (4th Cir. 1974) ("It is axiomatic that a federal court cannot acquire in personam jurisdiction over a defendant who does not voluntarily appear unless he is served with process in a manner authorized by federal statute or rule."). Rule 4(e) of the Federal Rules of Civil Procedure governs service upon an individual within a judicial district and provides that service may be made by "(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made . . . ." Fed. R. Civ. P. 4(e)(1).

The state law applicable here, Virginia Code § 8.01-296, provides, in pertinent part, that:

Process . . . may be served upon natural persons as follows:

1.  By delivering a copy thereof in writing to the party in person; or

2.  By substituted service in the following manner:

a.  If the party to be served is not found at his usual place of abode, by delivering a copy of such process and giving information of its purport to any person found there, who is a member of his family . . . and who is of the age of 16 years or older; or

b.  If such service cannot be effected under subdivision 2a, then by posting a copy of such process at the front door or at such other door as appears to be the main entrance of such place of abode, provided that not less than 10 days before judgment by default may be entered, the party causing service or his attorney or agent mails to the party a copy of such process and thereafter files in the office of the clerk of the court a certificate of such mailing.

. . . .

Va. Code Ann. § 8.01-296.

The United States argues that it effected a proper substituted service of process in accordance with Rule 4(e)(1) and Virginia Code § 8.01-296(2)(b). ECF No. 11. The Court agrees. "[A]s a general principle, [a] signed return of service constitutes prima facie evidence of valid service, which can be overcome only by strong and convincing evidence." *Ramsay v. Sanibel & Lancaster Ins., LLC*, No. 2:11cv207, 2015 WL 3830891, at *6 (E.D. Va. June 19, 2015) (citations and quotations omitted). The signed proof of service and accompanying affidavit by Douglas Wemer constitute prima facie evidence that Palmer was duly served, which Palmer has offered no evidence to rebut. ECF Nos. 5, 5-1. The inquiry, however, does not end there because the Court must also be satisfied that each of the requirements of the statute has been met. In cases where a defendant has received "actual notice" of a lawsuit, the Fourth Circuit has indicated that the technical requirements of the service rules "should be liberally

9

construed to effectuate service and uphold the jurisdiction of the court . . . ." *Karlsson v. Rabinowitz*, 318 F.2d 666, 668–69 (4th Cir. 1963).

At the hearing and in its brief regarding service of process, the United States argued that Palmer possessed actual notice of the commencement of this lawsuit. The facts relied upon by the United States, as supplemented by the hearing testimony, in support thereof are that: (a) Palmer knew, as a result of his admitted earlier telephonic contact with the IRS and his conversation with Summerton on February 14, 2017, that the IRS had made tax assessments against him and was seeking to collect the outstanding balance due; (b) on May 16, 2017, Palmer's mother met with a man seeking to deliver unspecified legal documents to Palmer at his residence; (c) a federal tax lien was filed against Palmer's Virginia Beach residential property on February 28, 2017, and approximately seven weeks later, on April 19, 2017, Palmer and Robin Hansell filed a deed seeking to transfer ownership of the property solely to Hansell; and (d) a copy of the complaint and summons were posted on the door of Palmer's residence on June 1, 2017, when persons present in the residence refused to answer the door and meet someone who identified himself as a process server.

Although this case differs significantly from *Karlsson*, where the defendant's spouse was served with process and the court found that she "undoubtedly" and "promptly" notified the defendant, 318 F.2d at 667 n.2, the Court is satisfied that the facts noted above are sufficient to impute actual notice of the commencement of this action to Palmer. In so holding, the Court is mindful that having notice of the IRS's pre-filing activities is not the same as having notice of the lawsuit filed in this Court and that the latter inquiry is the central one. Nevertheless, the pre-filing facts discussed above placed Palmer on notice that the IRS was dramatically increasing its collection efforts against him. Having previously made assessments against Palmer in 2007,

2012, and 2015 for the unpaid taxes, in the early months of 2017, the IRS not only sent a revenue officer to his home, but, when that effort failed to bear fruit, also filed a tax lien against his Virginia Beach residence on February 28, 2017. ECF No. 11-1 at 18–19. In response to this latter action, on April 19, 2017, Palmer apparently sought to avoid the tax lien by transferring title to his residence to Robin Hansell. *Id.* at 21–23. The very next day, the United States filed the complaint in this matter. ECF No. 1.

Viewed against this backdrop of escalating moves and counter-moves, the events of May 16, 2017 and June 1, 2017 take on greater significance. Specifically, the Court finds it noteworthy that, after Palmer purportedly divested himself of any interest in the property on April 19, 2017, Wemer encountered Palmer's mother there on May 16, 2017. And, while speaking with one who expressed a desire to find Palmer and deliver legal documents to him, Palmer's mother disclaimed any knowledge about her son's whereabouts and about how to contact him. Next, when Wemer attempted to effect personal service on June 1, 2017, the adult males present in the home ceased conversing at the sound of Wemer's knock and failed to respond after he identified himself and the purpose for his visit. Such facts, when coupled with Palmer's earlier knowledge of the IRS's collection activities, justify the Court's conclusion that Palmer actually knew of the lawsuit sufficient to support a liberal construction of the rules regarding service of process.

Moreover, even in the absence of actual notice, the statutory requirements for service of process have been satisfied in this case. *See, e.g., Nat'l Trust for Historic Preservation v. 1750 K Inv. P'ship*, 100 F.R.D. 483, 485–86 (E.D. Va. 1984) (noting that "statutes authorizing constructive service of process are to be complied with strictly"), *aff'd*, 755 F.2d 929 (4th Cir. 1985). Section 8.01-296 of the Virginia Code imposes three requirements for service that apply

11

to this case. First, it must be shown that service could not have been accomplished by delivering a copy of the process and providing information about its import to a family member of the defendant, 16 years old or older, at the defendant's usual place of abode. Va. Code Ann. § 8.01-296(2)(a), (2)(b). Second, process must have been posted at the front door or at another door that appeared to have been the main entrance at the defendant's usual place of abode. *Id.* And finally, not less than 10 days before the entry of any default judgment, the plaintiff or its attorney or agent must have mailed to the defendant a copy of the process and thereafter filed with the clerk's office a certification of such mailing. *Id.*

Each of these requirements has been met. First, after meeting Palmer's mother on May 16, 2017, process server Wemer followed his supervisor's direction to continue to make efforts to personally serve Palmer himself. To that end, Wemer went to the residential address noted herein on five additional occasions from May 26, 2017 through June 1, 2017. ECF No. 5-1 at 2. During the first four instances, no one was at home. On the fifth occasion, on June 1, 2017, though the process server observed a vehicle in the driveway and heard adult male voices coming from inside the house, no one would answer the door, notwithstanding Wemer's announcement of his presence and purpose. *Id.* These facts suffice to establish that service could not be effected by serving Palmer personally or by leaving process with a family member.[2]

---

[2] No basis exists for penalizing the process server (or the United States) for not serving the woman who identified herself as Palmer's mother on May 16, 2017. Doing so would only serve to discourage process servers from going the extra mile by trying to personally serve parties named in a complaint. *Cf.* Fed. R. Civ. P. 1 (noting that the Federal Rules should be "construed, administered, and employed by the court . . . to secure the just, speedy, and inexpensive determination of every action"). Wemer's subsequent, repeated unsuccessful attempts in carrying out the task, when coupled with one or more occupants' apparent refusal to answer the door on June 1, 2017, establish that personal service upon Palmer (or a family member) could not have been completed.

Second, as noted in the affidavit, on June 1, 2017 the process server taped both the summons and complaint in this matter "to the front door" of the residential address discussed herein. ECF No. 5-1 at 2.

Third, well before the 10-day window preceding any entry of default judgment in the matter and after the posting noted above, the process server mailed by U.S. mail a copy of the summons and complaint to Palmer at the same residential address and certified the same in his affidavit, which the United States electronically filed with the clerk of court, along with the completed proof of service. *Id.*; ECF No. 5.

This leaves only the question whether the inability to effect service upon a family member and the posting at the front door (steps one and two noted above) occurred at Palmer's "usual place of abode." Va. Code Ann. § 8.01-296(2)(a). Section 8.01-296 does not define the terms "usual place of abode." Rule 4(e)(2)(B), however, similarly refers to an "individual's dwelling or usual place of abode," Fed. R. Civ. P. 4(e)(2)(B), and, when interpreting such language in a prior version of the rule, the Fourth Circuit noted that "the decisions interpreting the term indicate that no hard-and-fast definition can be laid down, but that what is or is not a party's 'dwelling house or usual place of abode' within the meaning of the rule or statute is a question to be determined on the facts of the particular case." *Karlsson*, 318 F.2d at 668 (quotations omitted) (citing 2 Moore, Fed'l Practice, ¶ 4.11 at 929 (2d ed. 1962)); *see also* 4 James Wm. Moore et al., Moore's Federal Practice, § 4.92 (3d ed. 2018) (noting that "dwelling place or usual place of abode" typically refers to a person's residence and that a person may have multiple residences for purposes of service of process, even if the person does not continuously live at a particular residence).

Following such an approach, the Court is satisfied that the residential address noted on the complaint and in the Wemer declaration constituted Palmer's usual place of abode at the time of the events described therein. This conclusion is supported by the following facts: (a) the residential address is the same address on file for Palmer in the IRS taxpayer account transcripts, ECF No. 7-1 at 3–16; (b) records on file with the Circuit Court of Virginia Beach indicate that the property at that address was deeded to Palmer and a Robin Hansell, "as joint tenants by the entirety with the right of survivorship" in August 2015, ECF No. 11-1 at 11–14; (c) property tax records with the City of Virginia Beach's Treasurer's Office list "Palmer Rick Anthony" as the owner of the property at that address, *id.* at 16; (d) after the recording of a federal tax lien against the property at that address, Palmer took apparent steps to attempt to avoid that lien by means of a quitclaim deed to his acknowledged girlfriend, Robin Hansell, *id.* at 21–23; (e) Palmer signed the deed of gift on April 11, 2017 before a notary public in Virginia Beach, *id.* at 23; (f) Palmer's mother was present at the residence approximately one month after (May 16, 2017) the recording of the deed of gift, ECF No. 5-1 at 2; (g) the refusal of any occupants to answer when the process server presented himself at the residential address on June 1, 2017, *id.*; (h) the absence of any evidence that any mailings made to Palmer at the residential address, including the process server's mailing of the summons and the complaint, have been returned as undeliverable, *id.*, ECF No. 11-1 at 2; and (i) Palmer's statements to Summerton on February 14, 2017 that he then jointly owned and resided at the residence with his girlfriend, Robin Hansell.

Because the United States established that substitute service of process properly occurred, the Court has personal jurisdiction over Palmer.

## C. Venue

Finally, venue is proper pursuant to 28 U.S.C. § 1396, which provides that "any civil action for the collection of internal revenue taxes may be brought, [among other locations,] . . . in the district of the taxpayer's residence . . . ." 28 U.S.C. § 1396. Inasmuch as Palmer maintained his usual place of abode in Virginia Beach at the time of the filing of this suit, venue is proper in the Eastern District of Virginia.

## IV. LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure governs entries of default and default judgments. Pursuant to Rule 55(a), the Clerk must enter default against a party that "has failed to plead or otherwise defend" against an action. After the Clerk has entered default, a plaintiff may seek a default judgment against a defendant pursuant to Rule 55(b). A court must "exercise sound judicial discretion" when considering whether to enter default judgment, "and the moving party is not entitled to default judgment as a matter of right." *EMI Apr. Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009) (citing *Sentry Select Ins. Co. v. LBL Skysystems (U.S.A.) Inc.*, 486 F. Supp. 2d 496, 502 (E.D. Pa. 2007)). The United States Court of Appeals for the Fourth Circuit has expressed "a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010). Default judgment may be appropriate, however, "when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

Although a defaulting party admits the factual allegations in the complaint, a court must evaluate the sufficiency of the allegations to determine if the complaint states a cause of action. *See Globalsantafe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003)

("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). *See also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The court must . . . determine whether the well-pleaded allegations in [the] complaint support the relief sought in th[e] action."); *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998) (holding that the district court erred in granting default judgment to plaintiff where plaintiff failed to state a valid claim).

## V. ANALYSIS OF PLAINTIFF'S CLAIM

The one-count complaint filed by the United States seeks to reduce to judgment Palmer's liability for unpaid federal income taxes in furtherance of the collection of the same. Compl. at 1. The complaint identifies the United States as the plaintiff and Ric Anthony Palmer, a resident of Virginia Beach, as the defendant. *Id.* at ¶¶ 3–4. The complaint alleges that, due to Palmer's failure to file federal income tax returns for 2004, 2006, 2007, 2008, and 2012, the IRS prepared such returns for him based upon the income he received in each of those years. *Id.* at ¶ 5; *see* 26 U.S.C. § 6020(b) (authorizing the Secretary of the Treasury to prepare returns, based upon available information, for any person who fails to make any such returns as required by internal revenue laws). Following the preparation of such returns for Palmer, a delegate of the Secretary of the Treasury made assessments, with statutory additions for interest and penalties, against Palmer for each of the tax years in question as set forth in the table noted below:

| Tax Period | Date of Assessment | Unpaid Balance of Assessment | Accrued Interest (I) and Penalty (P) as of 4/17/2017 | Amount Due as of 4/17/2017 |
|---|---|---|---|---|
| 2004 | 4/30/2007 | $104,100.33 | $9,970.15 (I) | $114,070.48 |
| 2006 | 9/3/2012 | $35,175.28 | $3,369.69 (I) | $38,544.97 |
| 2007 | 9/3/2012 | $5,864.68 | $561.81 (I) | $6,426.49 |
| 2008 | 9/3/2012 | $10,698.26 | $1,024.87 (I) | $11,723.13 |
| 2012 | 9/21/2015 | $526.45 | $31.19 (I) $31.09 (P) | $588.73 |
| TOTAL | | | | $171,353.80 |

Compl. ¶ 5; *see* 26 U.S.C. §§ 6601(a) (requiring imposition of interest on unpaid taxes), 6651(a)(1) (authorizing penalties for failure to file required tax returns). Notwithstanding the United States' notice and demand for payment of the sums duly assessed, the complaint alleges that the sums remain unpaid. Compl. ¶ 6. As Palmer has not answered or otherwise responded timely to the complaint, the allegations recited above are uncontested and admitted in all respects, except with respect to the sums noted as discussed below. *See* Fed. R. Civ. P. 8(b)(6) (noting that allegations, other than those relating to damages, are admitted when "a responsive pleading is required and the allegation is not denied"). Based upon the foregoing, the Court concludes that the United States has stated a valid claim against Palmer. *See* 26 U.S.C. § 6502(a) (authorizing the United States to pursue collection in a court proceeding for tax assessments).

Having found that the complaint states a valid claim against Palmer, the Court must next determine the appropriate relief. "Although well-pleaded factual allegations are accepted as true for default judgment purposes, a party who defaults does not admit the allegations in the claim as to the amount of damages." *S. Bank & Trust Co. v. Pride Grp., LLC*, No. 2:14cv255, 2015 WL 410726, at *4 (E.D. Va. Jan. 28, 2015); *see also Lawbaugh*, 359 F. Supp. 2d at 422 ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not."). Accordingly, a court must "independently calculate the appropriate amount of damages." *Pride Grp., LLC*, 2015 WL 410726, at *4 (citing *Ryan*, 253 F.3d at 780–81).

In conjunction with its motion for default judgment, the United States submitted the declaration of Revenue Officer Jeffrey D. Willingham, who verified the assessment information noted in the complaint (and repeated in the table contained herein) and swore that true copies of

Palmer's IRS taxpayer account transcripts for the tax years recited in the complaint were attached to his declaration. ECF No. 7-1. Having independently reviewed these materials and verified the calculations contained therein, and in light of Palmer's failure to respond to the complaint, the Court **RECOMMENDS** that judgment be entered in favor of the United States and against Ric Anthony Palmer for federal income taxes for the years 2004, 2006, 2007, 2008, and 2012 in the amount of $171,353.80, plus statutory additions accruing thereon from April 17, 2017 until paid.[3] *See United States v. Register*, 717 F. Supp. 2d 517, 522 (E.D. Va. 2010) (noting that the government's certified copies of tax assessments "are presumed correct unless the defendant provides proof to the contrary") (citing *United States v. Janus*, 428 U.S. 433, 440 (1976); *United States v. Pomponio*, 635 F.2d 293, 296 (4th Cir. 1980)).

## VI. RECOMMENDATION

For the reasons stated above, it is **RECOMMENDED** that plaintiff's motion for default judgment be **GRANTED** and that default judgment be **ENTERED** against defendant Ric Anthony Palmer for federal income taxes for the years 2004, 2006, 2007, 2008, and 2012 in the amount of $171,353.80, plus statutory additions accruing thereon from April 17, 2017 until paid.

## VII. CLERK'S SERVICE OF REPORT AND RECOMMENDATION

It is also hereby **ORDERED** that the Clerk is directed to serve a copy of this report and recommendation upon counsel for plaintiff and Ric Anthony Palmer at the address noted on the face of the complaint (ECF No. 1).

---

[3] Although the complaint requests that the Court also award costs to the United States, Compl. at 3, at the hearing on March 19, 2018, counsel for the government expressly waived such a claim.

## VIII. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within 14 days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within 14 days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/
Robert J. Krask
United States Magistrate Judge

Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
March 26, 2018